GALVESTON ELECTRIC COMPANY v. L. M. WILKINS.

Decided June 21, 1909.

**1.—Pleading—Negligence—Street Railway—Collision.**

In an action against a street railway company for injuries to the person and property of plaintiff in a collision of the street car with his vehicle, petition considered and held that the allegations were sufficient to raise the issues of negligence on the part of the motorman in failing to use ordinary care to discover plaintiff on or near the track, and in running said car at a higher rate of speed than could be done with safety.

**2.—Street Railways—Discovered Peril—Collision.**

Where the street railway company was charged with negligence causing a collision with a vehicle on or near the track, and there was no evidence tending to show that consideration for the safety of the passengers prevented the motorman from sooner stopping the car, nor any evidence tending to show that the safety of the passengers on the car would have been endangered in the least if the car had been stopped in time to have avoided the collision, the court properly refused to submit the issue of whether the car could have been stopped, with safety to the passengers, in time to have avoided the collision.

**3.—Discovered Peril—Collision—Charge.**

A charge, which submitted the issue whether the motorman could, by the exercise of ordinary care, have discovered plaintiff's peril in time to have avoided the injury, and told the jury to find for defendant if they believed, from the evidence, that the motorman, in the exercise of ordinary care, failed to discover plaintiff's peril in time to prevent injuring him and that when he did discover such peril he used all the means in his power to prevent the collision, was a sufficient submission of the issue, no issue of danger to the passengers being raised.

Appeal from the District Court of Galveston County. Tried below before Hon. Lewis Fisher.

*Terry, Cavin & Mills,* for appellant.—When the peril of a licensee upon the track is discovered by the operative of a railroad train or car, the only duty devolving upon the operative of said car is to use all means consistent with safety of said train or car and the passengers

thereon to stop said train or car in order to avoid injury to said licensee. Texas & P. Ry. Co. v. Breadow, 90 Texas, 27; Houston & T. C. Ry. v. Wallace, 21 Texas Civ. App., 394; Texas & P. Ry. v. Staggs, 90 Texas, 458.

*Marsene Johnson* and *O. S. York,* for appellee.

PLEASANTS, CHIEF JUSTICE.—This suit was brought by appellee against appellant to recover damages for injury to his person and to a vehicle owned by him, which injuries and damages it is alleged were caused by the negligence of one of appellant's employes operating one of its cars, whereby a collision occurred between said car and vehicle. The trial in the court below was by a jury and resulted in a verdict and judgment in favor of plaintiff for the sum of $100.

The petition states the cause of action as follows: "And plaintiff further alleges that on said July 7, 1906, he was going westwardly on said Market street between Twenty-seventh and Twenty-eighth streets in his buggy; that at said time said Market street was crowded with other vehicles and persons, and that a certain street car belonging to and operated by defendant was approaching him, going eastwardly along one of the tracks on Market street; that plaintiff's horse became frightened at some cause, and became hard to control, and that when said car had approached within about ninety (90) feet of plaintiff the employe of defendant operating said car discovered plaintiff and his vehicle and his horse on the track, and that plaintiff halloaed to said employe of defendant to stop until plaintiff could get his horse and vehicle off said track and across the street, and that plaintiff also waved his hand and screamed to said motorman to stop his car, and that said employe of defendant discovered the peril in which the plaintiff was at the time, or by the use of ordinary care could have discovered plaintiff's peril at said time, in ample time to have stopped said car and to have prevented a collision with plaintiff, but that said employe was operating said car at a higher rate of speed than could be done with safety to plaintiff, and that said employe of defendant made no attempt to stop said car, and made no attempt to prevent collision with plaintiff until when within about ten feet of plaintiff, and that wherefore said car at said time crashed into plaintiff's said vehicle and horse, overturning said vehicle and throwing the plaintiff under the body of said vehicle, and catching the plaintiff's foot and shoe under one of the wheels of said car, and causing plaintiff to sustain the damage and injury hereinafter set out and pleaded.

"And plaintiff further alleges that the said failure of the motorman to stop said car and to thereby avoid collision with plaintiff was negligence; and that the negligence of defendant was the proximate cause of the damages and injuries sustained by plaintiff, and that plaintiff in no way contributed to said negligence of defendant."

The defendant answered by general denial and by the following special plea:

"And for further and special answer herein, if required, defendant shows to the court that if plaintiff and his property, or either of them, was injured by one of defendant's cars, such injuries resulted from an

unavoidable accident caused by the shying, balking, backing or swerving of the horse driven by plaintiff at the time in question, by which sudden shying, balking, backing or swerving of said horse and the vehicle to which said horse was attached, said vehicle and the plaintiff, who was therein, was suddenly, and without warning or notice to defendant's employes in charge of said car, placed upon the track in front of said moving car and so close to said car that it could not be stopped in time to avoid injuring plaintiff and his property, but for which unavoidable shying, balking, backing or swerving of the animal, neither said plaintiff nor his property would have received the injuries complained of in plaintiff's petition."

The court charged the jury as follows:

"You are further instructed that, if you believe from the evidence that on or about the seventh day of July, 1906, the plaintiff, L. M. Wilkins, while in the exercise of ordinary care on his part, and while riding west in his buggy on Market street, in the city of Galveston, his horse becoming frightened and hard to control, and that while plaintiff was attempting to manage and control said horse, the said horse backed upon the tracks of the defendant company in such a way that plaintiff was run into, injured and damaged, as alleged in his petition, by one of the cars operated by the defendant, the Galveston Electric Company; and if you further believe from the evidence that at the time of the collision between plaintiff's buggy and the defendant's car the motorman in charge of said car was not exercising ordinary care as to the rate of speed at which said car was being operated; or if you further believe from the evidence that the motorman on said car saw the plaintiff attempting to control his horse on or near the tracks of the defendant in front of said car, and that by the exercise of ordinary care on his part—the motorman's part—said car could have been stopped in time to prevent a collision with plaintiff's buggy; or, if you believe from the evidence that the motorman did not see plaintiff at or near the tracks of the defendant in front of said car, but you further believe that by the exercise of ordinary care on the part of him —the said motorman—the plaintiff could have been seen by said motorman in time to prevent the collision between the said car and plaintiff's buggy; and if you further believe from the evidence that the failure of the motorman to exercise ordinary care in the respects mentioned, if you have found that he did fail to use and exercise ordinary care, was negligence on the part of the defendant company, and that such negligence, if any, was the proximate cause—that is, the direct and immediate cause of the injuries and damages to plaintiff, if any— then you will find a verdict for plaintiff in accordance with the measure of damages hereinafter given you, unless you should further believe that the plaintiff was guilty of contributory negligence—that is to say, failed to use ordinary care for his own safety—in which event your verdict shall be for defendant."

By its first assignment of error appellant assails this charge upon several grounds. The first objection urged to said charge is that the issues of negligence on the part of the motorman in failing to use ordinary care to discover plaintiff on or near the track, and in running said car at a higher rate of speed than could be done with safety, were

not raised by the pleadings, and therefore should not have been submitted to the jury.

We do not think this objection is valid. The petition, as above shown, expressly charges that the motorman could have discovered plaintiff's danger by the use of ordinary care, and that at the time of the collision the car was being operated at "a higher rate of speed than could be done with safety to plaintiff," and that said motorman made no effort to stop the car until within about ten feet of plaintiff, "and that wherefore said car at said time crashed into plaintiff's said vehicle and horse, overturning said vehicle, and throwing the plaintiff under the body of said vehicle and catching plaintiff's foot and shoe under one of the wheels of said car and causing plaintiff to sustain the damage and injury hereinafter set out and pleaded." It is further alleged that the failure of the motorman to stop the car in time to avoid the collision was negligence. These allegations, in effect, charge that plaintiff's injury was caused by the failure of the motorman to use ordinary care to discover plaintiff's perilous position, and by his running the car at an unsafe rate of speed and failing to use any care to stop same in time to prevent the injury.

The next objection to this charge is that it ignores the issue of whether the car could have been stopped in time to have avoided the collision with safety to the passengers therein.

This objection is without merit for the reason that there is no evidence which tends to show that consideration for the safety of the passengers prevented the motorman from sooner stopping the car, nor any evidence tending to show that the safety of the passengers on said car would have been endangered in the least if the car had been stopped in time to have avoided the collision.

The second assignment, which complains of the refusal of the court to give a special instruction submitting the issue of whether the car could have been stopped, with safety to the passengers, in time to have avoided the collision, was properly refused for the reason above stated.

The third assignment is disposed of by what we have said in answer to the contentions made under the first assignment, and is overruled.

The fourth assignment complains of the refusal of the court to give the following instruction requested by the defendant:

"If you believe from the evidence that the injury to plaintiff and his vehicle, if any, was caused by the sudden backing, shying, or swerving of the horse attached to said vehicle, whereby said vehicle and plaintiff were backed, or placed in front of the car of defendant, and that after the fact became apparent to the motorman in charge of said car that there might be a collision between said car and the vehicle in which plaintiff was driving, said motorman used all reasonable means, consistent with the safety of the passengers in said car, to stop said car and prevent injury to plaintiff and his property, then your verdict will be for the defendant."

The court did not err in refusing this charge. The issue of whether the motorman could, by the exercise of ordinary care, have discovered plaintiff's peril in time to have avoided the injury was fairly submitted in the charge given by the court and the jury were told to find for the defendant if they believed from the evidence that

the motorman, in the exercise of ordinary care, failed to discover plaintiff's peril in time to prevent injuring him, and that when he did discover such peril he used all the means in his power to prevent the collision. Having given this charge, it was unnecessary to repeat such instruction. The requested charge was also objectionable in that it submits the issue of safety of the passengers on the car when no such issue was raised by the evidence.

The issue of contributory negligence was sufficiently submitted by the charge given by the court, and there was no error in refusing the special instruction on that issue requested by the defendant, the refusal to give which is complained of by the fifth assignment of error.

We think the issue of mental pain as a necessary result of the physical injury received by plaintiff was fairly raised both by the pleadings and the evidence, and the court did not err in submitting that issue to the jury.

None of the assignments present any reversible error, and the judgment of the court below is therefore affirmed.

*Affirmed.*

Writ of error refused.